ZAINEY, J.
AUGUST 10, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMERICAN HONDA MOTOR CO., INC. | CIVIL ACTION |
| VERSUS | NO. 04-1205 |
| PREMIER QUALITY IMPORTS, LLC | SECTION "A"(4) |

## ORDER AND REASONS

Before this Court is a **Motion to Dismiss (Rec. Doc. 11)**, filed by Defendant Premier Quality Imports, LLC (hereinafter "Premier Honda"). The motion is opposed by Plaintiff, American Honda Motor Company, Inc. (hereinafter "American Honda"). *Amicus curiae* briefs were also filed by the Louisiana Automobile Dealers Association and the Louisiana Motor Vehicle Commission on behalf of Premier Honda. Additionally, a **Partial Motion for Summary Judgment (Rec. Doc. 13)** filed by American Honda is before the Court and is opposed by Plaintiff. For the following reasons, the Partial Motion for Summary Judgment is DENIED. Moreover, the Motion to Dismiss is DENIED in part and GRANTED in part and this matter is STAYED and ADMINISTRATIVELY CLOSED pending resolution of the complaint(s) currently pending before the Louisiana Motor Vehicle Commission.

FACTUAL BACKGROUND

Premier Honda is licensed by the Louisiana Motor Vehicle Commission to sell new Honda motor vehicles. It operates its principal place of business in New Orleans, Louisiana at the former location of Honda Town, which was the "doing business as" name of Jerome Imports, Inc. (hereinafter "Jerome Imports"). In October 2003, Jerome Imports entered into an Agreement to Purchase (hereinafter referred to as "Purchase Agreement") with Troy Duhon, a principal of Premier Honda, to sell its dealership assets to "Troy J. Duhon or his assignee" (hereinafter also referred to as "Premier Honda"). The Purchase Agreement provided that the purchase price included "all new 2004 and 2003 Honda motor vehicles," in addition to "all parts and accessories on hand on the date of execution."

The Purchase Agreement, however, was conditioned upon Premier Honda becoming a licensed Honda dealer, which required the approval of American Honda. Accordingly, American Honda requested Jerome Imports and Premier Honda, both together and separately, to submit certain information and documents as part of an application and approval process of the proposed sale/transfer. Many of the documents submitted to American Honda are included as Exhibit 1 to American Honda's Partial Motion for Summary Judgment (Rec. Doc. 13). For reasons to be discussed, it is noteworthy that all of the documents submitted to American Honda characterized the transaction between Jerome Imports and Premier Honda as a transfer, rather than a sale (*e.g.*, Jerome Import's dealership resignation letter stated "this confirms that the transaction between Seller and Buyer is a transfer of Seller's assets or interest and not a termination of a dealership, and that it does not entitle Seller, Buyer, or any third party to claim any rights that might exist or arise in connection with a termination.").

2

After evaluating the proposed transaction and application documents submitted by Jerome Imports and Premier Honda, American Honda sent a Letter of Intent, dated December 22, 2003, to Premier Honda indicating that it conditionally consented to the ownership transfer and the appointment of Premier Honda as a Honda dealer.  American Honda's final approval was conditioned upon the satisfaction of multiple requirements set forth in the Letter of Intent, only a few of which are pertinent to the present matter.  These relevant requirements included Premier's acknowledgment and agreement with the terms of the Letter of Intent, the return of a "Deed is Done" letter executed by Jerome Imports and Premier Honda (notably, this letter was prepared by American Honda and provided to Jerome Imports for execution, see Partial Motion for Summary Judgment, Exhibit 1, Attachment F, p. 1), payment of all amounts due to American Honda from Jerome Imports, and "written confirmation that the transaction has been consummated in accordance with documentation previously submitted to [American Honda] for approval."

Additionally, Premier Honda acknowledged and agreed to the following, which was included in the Letter of Intent:

> In evaluating the request, [American Honda] has relied upon the following: (i) seller's and buyer's representations to [American Honda]; and (ii) the written documentation and information provided to [American Honda] including, without limitation, the buyer's application(s) (including attachments) and the Transfer Agreement.
>
> \*   \*   \*
>
> In signing this [Letter of Intent], Dealer understands and agrees that the representations and warranties made by Dealer concerning ownership, management, capitalization, facilities, and service requirements as set forth in this [Letter of Intent], Dealers dealer application and related documents signed by Dealer are being relied upon by [American Honda] and they provide the inducement to issue this [Letter of Intent] and subsequently, when all terms are met, the Agreement.

* * *

> Dealer agrees that [American Honda] may terminate this [Letter of Intent] immediately without any liability to Dealer if [American Honda] becomes aware of information, following the date of this [Letter of Intent], which in [American Honda's] sole opinion would have caused [American Honda] to decide not to enter into the [Letter of Intent] had it known this information beforehand.  This [Letter of Intent] is also specifically conditioned upon the continued accuracy of the information Dealer has submitted to [American Honda].  Dealer understands and agrees that it is Dealer's responsibility to advise [American Honda] promptly if any changes occur in the information Dealer has provided to date.

Partial Motion for Summary Judgment, Exhibit 1, Attachment F.  After receiving American Honda's conditional approval, an Act of Cash Sale and an Assignment of Repurchase Rights were executed between Jerome Imports and Premier Honda.  The Assignment of Repurchase Rights provided the following:

> [Jerome Imports], a Louisiana Corporation ("Honda Town"), hereby assigned to [Premier Honda] a Louisiana Liability Company, Honda Town's termination rights pursuant to its franchise agreement with [American Honda] and/or La. R.S. 32:1257 and hereby authorized [Premier Honda] to return to [American Honda] on [Jerome Imports] behalf, pursuant to its Dealer Sales and Service Agreement (franchise), and/or La. R.S. 32:1257 in connection with the termination of's [sic] dealership operations, Honda motor vehicles on hand at [Jerome's Imports] dealership or later removed to [Premier Honda's] dealership . . .

Partial Motion for Summary Judgment, Exhibit 1, Attachment H.  Finally, it is noteworthy that the "Deed is Done" letter executed between Jerome Imports and Premier Honda (and prepared by American Honda) contained the following provision:

> [t]his further confirms that we understand that this transaction is a transfer of the dealership or "franchise" and not a termination of a dealership or "franchise," and that it does not entitle either of us to claim any rights that might exist or arise connection with a termination.

Clearly, the characterizations of the transaction between Jerome Imports and Premier Honda included in the Assignment of Repurchase Rights and the Deed is Done letter were

4

contradictory. Moreover, the characterization of the transaction as a termination in the Assignment of Repurchase Rights clearly conflicted with other representations that Premier Honda and Jerome Imports made to American Honda because the transaction was referred to as a transfer in all dealings with American Honda. As a result, American Honda did not learn about the Assignment of Repurchase Rights until after it signed a Dealer Agreement with Premier Honda in January 2005. Shortly thereafter, American Honda received a letter from Premier Honda demanding that it repurchase Honda vehicles and parts that Premier Honda had just acquired from Jerome Imports. These vehicles and parts had a stated value of $856,410.09.

Approximately one month later, American Honda denied Premier Honda's purchase demand on several grounds. The reason for denial most relevant to the present litigation concerns two provisions of the Dealer Agreement, which was applicable to both Jerome Imports and Premier Honda. In Section 20.4 of the Dealer Agreement, Premier Honda and Jerome Imports acknowledged and agreed that any purported change, transfer or assignment of rights under the Dealer Agreement without the prior written consent of American Honda shall be "null and void and not be binding upon American Honda." American Honda did not provide Jerome Imports, nor Premier Honda, with written approval to transfer any rights that the dealers executed in their Assignment of Repurchase Rights. Nonetheless, the Court notes that the Assignment of Repurchase Rights assigned rights pursuant to the Dealer Agreement *and/or* La. R.S. 32:1257 (emphasis added).

Furthermore, American Honda notes that Section 20.4.F of the Dealer Agreement prohibits Premier Honda from engaging in the "submission or participation in submission to American Honda of a false or fraudulent statement, application, report, request for issuance of

reimbursement, compensation, refund, or credit . . ." Not surprisingly, American Honda claims that Jerome Imports and Premier Honda submitted false and fraudulent statements to American Honda when they consistently stated that their transaction did not involve a termination, then subsequently sought to benefit from Jerome Imports' termination rights.

PROCEDURAL BACKGROUND

In March 2004, Premier Honda filed a complaint against American Honda with the Louisiana Motor Vehicle Commission (hereinafter the "Commission") raising the question of whether American Honda was obligated to repurchase the new vehicles and parts that Premier Honda had purchased from Jerome Imports. In April 2004, American Honda invoked the diversity jurisdiction of this Court and initiated the present litigation seeking to have its Letter of Intent and Dealer Agreement with Premier Honda nullified/rescinded/terminated. Premier Honda asserts that American Honda's litigation is nothing more than an attempt to preempt the administrative proceedings before the Commission.

Premier Honda alleges that Louisiana law grants the Commission exclusive jurisdiction over the termination of a dealership agreement, such that this Court does not have jurisdiction over American Honda's complaints. Alternatively, in the event that this Court determines that it has jurisdiction over this matter, Premier Honda urges it to abstain from hearing American Honda's suit in light of the *Burford* abstention doctrine. In response, American Honda asserts that the Commission does not have any jurisdiction, exclusive or otherwise, to decide American Honda's claims, which are based on Louisiana contract principles. Specifically, American Honda notes that it seeks rescission of Premier Honda's dealership on the basis of Premier Honda's pre-contractual fraudulent conduct. As such, American Honda asserts that the

Commission has no power to resolve this contracts issue because it only adjudicates disputes between a manufacturer and a dealer "if the dealer has a bona-fide Dealer Agreement" in the first place.

In addition to the Motion to Dismiss filed by Defendant, Plaintiff has also filed a Partial Motion for Summary Judgment that is currently before the Court.  In this motion, American Honda requests this Court to nullify and rescind the Letter of Intent and Dealer Agreement executed between itself and Premier Honda, in effect to terminate Premier Honda's dealership agreement with Honda.  American Honda also requests that this Court award it all damages it has allegedly sustained as a result of Premier Honda's alleged fraudulent activities, including attorney's fees and costs.  As it is clear that American Honda is not entitled to prevail on its partial motion for summary judgment, the Court will consider this motion before addressing the jurisdictional issues presented by Premier Honda (and the Commission and Louisiana Automobile Dealers Association (hereinafter "LADA") in their *amicus curiae* briefs).

American Honda's Partial Motion for Summary Judgment

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Id.*  The moving party bears the burden of establishing that there are no genuine issues of material fact.  *Lavespere v. Niagra Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

However, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id.* In determining whether a party is entitled to summary judgment, the court views the evidence in the light most favorable to the non-moving party. *Littlefield v. Forney Indep. School Dist.,* 268 F.3d 275, 282 (5th Cir. 2001), *citing Smith v. Brencettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The moving party bears the burden, as an initial matter, of showing the district court that there is an absence of evidence to support the nonmoving party's claim. *Id.*

American Honda is seeking the nullification and rescission of its Letter of Intent and Dealer Agreement with Premier Honda based on the alleged fraudulent actions of Premier Honda. According to the Louisiana Supreme Court, there are three requirements that must be satisfied before a contract may be rescinded on the basis of fraud: (1) one accused of fraudulent activity must misrepresent, suppress, or omit true information; (2) with the intent to obtain an unjust advantage or inconvenience to another; and (3) the error induced by the fraudulent act must relate to a circumstance that substantially influenced the victim's consent to the contract. *Shelton v. Standard/700 Associates*, 798 So. 2d 61, 64 (La. 2001).

Although American Honda cites several Fifth Circuit cases in support of the proposition that summary judgment motions may be used to determine fraudulent intent as a matter of law, none of the cases cited apply Louisiana law. Moreover, the Louisiana Supreme Court has held that questions of fraud are peculiarly within the province of the jury. *Todt v. Todt*, 110 So. 2d 566 (La. 1959). And more recently, the Louisiana First Circuit Court of Appeal has held that the existence of fraud is a question of fact. *Smith v. Roussel*, 2000-1028 (La.App. 1 Cir. 2001). Accordingly, absent clear and uncontroverted evidence of Premier Honda's fraudulent intent, a

summary judgment nullifying and/or rescinding the contracts executed between American Honda and Premier Honda would be inappropriate.

In an effort to meet this burden, American Honda alleges that the undisputed facts establish that Premier Honda's intention was to obtain an unjust advantage and/or to cause damage or inconvenience to American Honda. Specifically, American Honda claims that Premier Honda misrepresented the true nature of its transaction with Jerome Imports. Subsequently, American Honda relied on the misrepresentation when it approved the transfer and appointed Premier Honda as an authorized Honda dealer. Moreover, because Premier Honda subsequently disclosed that it had entered into an "Assignment of Repurchase Rights" with Jerome Imports and sought to have American Honda repurchase its old inventory and parts, American Honda alleges that these actions clearly indicate Premier Honda's intent to obtain an unjust advantage and/or to cause damage or inconvenience to American Honda.

In its opposition, however, Premier Honda alleges that it was American Honda that required Jerome Imports and Premier Honda to characterize their contract as a transfer agreement. Furthermore, Premier Honda asserts that, regardless which terminology was used by the parties, La. R.S. 32:1257 legally permitted Jerome Imports to exercise its termination rights, regardless of how it characterized the agreement with Premier Honda. In fact, in an affidavit attached to the opposition, Mr. Troy Duhon stated that the "Deed is Done" letter was presented to him for execution on the day of closing outside the presence of his counsel. Moreover, Mr. Duhon avers that he was assured by Jerome Imports' counsel that the document would be and was of no effect under Louisiana law and was, therefore, unenforceable.

Accordingly, under these facts, Premier Honda alleges that it was not seeking to obtain an unjust advantage, but was only seeking to exercise the rights it believed it had been granted by the law to Jerome Imports by La. R.S. 32:1251, *et. seq.* and subsequently assigned to it in the Assignment of Repurchase Rights. Clearly, a credibility determination is necessary to resolve these conflicting characterizations of Premier Honda's intent in misrepresenting the character of its transaction with Jerome Imports to American Honda. As such, Premier Honda's intent in executing the contradictory documents remains a disputed genuine issue of material fact and, therefore, American Honda has failed to carry its burden. Accordingly, the Motion for Partial Summary Judgment is DENIED.

Premier Honda's Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. The question of subject matter jurisdiction is for the court to decide. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The party that invokes the federal subject matter jurisdiction bears the burden of establishing that jurisdiction. *St. Paul Reins. Co., Ltd. v. Occidental Steamship Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961).

There are two primary issues raised by Premier Honda's Motion to Dismiss: (1) whether the relief sought by American Honda is under the exclusive jurisdiction of the Commission, such that this Court is deprived of subject matter jurisdiction; and (2) if not, whether this Court should abstain from this matter in light of the doctrine of primary jurisdiction or the *Burford* abstention doctrine. Accordingly, it is necessary for this Court to consider the jurisdiction of the Commission over American Honda's claims for nullification and rescission. Subsequently, the

Court will consider the matter of abstention. Both of these issues are addressed under individual headings.

*Jurisdiction of the Louisiana Motor Vehicle Commission*

The Louisiana Motor Vehicle Act (hereinafter the "LMVA"), embodied in La. R.S. 32:1251, *et. seq.*, regulates motor vehicle manufacturers, distributors, dealers, and lessors that are doing business in Louisiana. The purpose of these statutes is to prevent fraud, imposition, and other abuses upon its citizens, and avoid undue control of the independent motor vehicle dealer by the motor vehicle manufacturing and distributive organizations. *Id.* (*see also La. Motor Vehicle Comm. v. Wheeling Frenchman*, 103 So. 2d 464 (La. 1958). The statutes also serve to prevent motor vehicle dealers, lessors, manufacturers, and distributing organizations from participating in unfair practices.

La. R.S. 32:1257(A) grants licensed motor vehicle dealers the right to demand the repurchase of certain vehicles and inventory upon the cessation of the business:

> (1) In the event the licensee ceases to engage in the business of being a motor vehicle or speciality vehicle dealer, or ceases to sell a particular make of motor vehicle or speciality vehicle and after notice to the manufacturer, converter, distributor, or representative by registered or certified mail, within thirty days of the receipt of the notice by the manufacturer, converter, distributor, or representative, the manufacturer, converter, distributor, or representative shall repurchase:
>
> > (a) All new and unused motor and speciality vehicles of the current and last prior model year delivered to the licensee and parts on hand that have not been damaged or substantially altered to the prejudice of the manufacturer while in the possession of the licensee.

Moreover, La. R.S. 32:1254(N) makes it is a violation for a manufacturer or distributor of motor vehicles to engage in the following conduct:

> (5) For a manufacturer of motor vehicles, a distributor, a wholesaler, distributor branch or factory branch, or officer, agent, or other representative thereof, to induce or coerce, or attempt to induce or coerce, any motor vehicle dealer:
>
> > (e) To enter into a franchise with a new motor vehicle dealer or during the franchise term, use any written instrument, agreement, or waiver, to attempt to nullify or modify any provision of this Chapter, or prevent a new motor vehicle dealer from bringing an action in a particular forum otherwise available under law. Such instruments, agreements, and waivers are null and void, unless done in connection with a settlement agreement to resolve a matter pending a commission hearing or pending litigation between a manufacturer, distributor, wholesaler, distributor branch or factory branch, or officer, agent, or other representative.

Both Premier Honda and the LADA assert that because manufacturers and distributors have more power and influence than individual motor vehicle dealers, it is important that their behavior be monitored and controlled to ensure that they do not employ discriminatory or unfair practices in dealing with Louisiana licensed dealers. LADA *amicus curiae* brief, p. 7. Moreover, the LADA asserts that the purpose of La. R.S. 32:1254(N)(5)(d)-(e) is intended to prevent such behavior. See *Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission*, 403 So. 2d 13 (La. 1981) for a comprehensive discussion regarding the policies behind the creation of the LMVA and the Commission.

In its own *amicus curiae* brief, the Commission argues that it has a declared public policy interest to adjudicate the issues presently before the Court. Commission *amicus curiae* brief, p. 3. Specifically, the Commission argues that Louisiana regulates substantive provisions of a franchise agreement between a distributor and a dealer and that the nullification or rescission of the Dealer Agreement is not a single contractual matter having affect only as to American Honda and Premier Honda, but a matter that has implications within the framework of regulatory laws,

rules and regulations. Clearly, the Commission has jurisdiction to adjudicate Premier Honda's complaint regarding the repurchase rights and to determine whether American Honda violated the LMVA by inducing or coercing Premier Honda and/or Jerome Imports to waive rights provided by the LMVA.

Nonetheless, American Honda argues that a state agency only has exclusive jurisdiction over a particular subject matter if the Louisiana constitution expressly deprives the district courts of original jurisdiction. Specifically, article V, § 16(A)(1) of the Louisiana Constitution provides:

> Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determination in workers' compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.

Furthermore, American Honda notes that the Louisiana Supreme Court has interpreted this constitutional provision to vest the district courts with at least concurrent original jurisdiction to adjudicate all legal matters, both civil and criminal, except for those matters that the constitution itself grants original jurisdiction to other courts or adjudicative tribunals. Plaintiff's Opposition, p. 5 *citing Moore v. Roemer*, 567 So. 2d 75, 79 (La. 1990). Accordingly, American Honda argues that its claims for rescission based on fraud is not within the jurisdiction of the Commission. Premier Honda, however, does not concede this point. Rather, it argues that the rescission sought by American Honda is no more than a termination of the Dealership Agreement–a matter that is clearly within the jurisdiction of the Commission. Regardless, the Court finds that American Honda asserts claims that are outside the jurisdiction of the Commission, and, therefore, properly within the jurisdiction of this Court. Accordingly, this

Court must determine whether it should exercise such jurisdiction in light of Premier Honda's motion to dismiss.

*Doctrine of Primary Jurisdiction*

The doctrine of primary jurisdiction vests Louisiana trial courts with discretion to defer to agencies those issues that are within their particular expertise. *Mills v. Davis Oil Co.*, 11 F.3d 1298, 1304 (5th Cir. 1994). The Fifth Circuit has held that Louisiana's doctrine of primary jurisdiction is substantive and must be applied by district courts as if they were Louisiana state courts. *Id.* In so finding, the court found the purpose of the doctrine would be thwarted if Louisiana litigants were able to come into federal court and circumvent an otherwise applicable administrative process. *Id.* "The two major considerations underlying the doctrine are the need for uniformity in various areas of regulated industry, and special administrative expertise attributable to agencies due to their intimate working associations with industries they regulate." *Id. citing South-West Utilities v. S. Cent. Bell Tel.*, 339 So.2d 425 (La.1976). The doctrine is "designed to guide a court in determining whether to refrain from exercising its own jurisdiction in a particular case so that an administrative agency with special competence may first decide an issue presented." *Central Louisiana Elec. Co. v. Louisiana Pub. Serv. Com'n*, 601 So. 2d 1383, 1388 (La. 1992) (Lemmon, concurring).

The distinction between primary jurisdiction and the exhaustion rule (*e.g.*, the exclusive jurisdiction asserted by Premier Honda) is that primary jurisdiction applies when concurrent jurisdiction exists between the courts and the administrative agency and the exhaustion rule applies when exclusive jurisdiction exists in the administrative agency, and courts have only appellate, as opposed to original, jurisdiction to review the agency's decisions. *Daily Advertiser*

*v. Trans-La,* 612 So.2d 7, 27 (La. 1993). In matters where a court chooses to defer to an administrative agency for an initial decision on matters within the expertise of the agency, it is a matter that is within the sound discretion of the trial court. *Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So.2d 475, 489 (La. 1991).

American Honda argues that the primary jurisdiction doctrine cannot apply here for three reasons: (1) American Honda's claims for rescission, nullity, and damages are independent of any termination rights it might have under the LMVA; (2) deference would not further a need for uniformity within the regulatory scheme; and (3) the Commission does not have any special expertise to adjudicate American Honda's claims for rescission and damages. Premier Honda, American Honda, and the LADA all cite the decision of *Volvo Trucks North America, Inc. v. Crescent Ford Truck Sales, Inc.*, 2003 WL 1936356 (E.D. La. 2003) as relevant to these issues.

In *Volvo*, plaintiff filed a declaratory action asserting its right to terminate its Dealership Agreement with Crescent Ford. *Id.* at 2. Crescent Ford subsequently moved to dismiss the action and to stay Volvo's action for damges for Crescent Ford's alleged breach of the dealership agreement. In considering arguments very similar to those raised in the present matter, Judge Livaudais found that Volvo's substantive right to terminate the dealership agreement was limited to the administrative proceeding before the Commission, and to judicial review in the state court, as specified in La. R.S. 32:1251 *et. seq. Id.* at 4.

Accordingly, the court held that federal court could not provide other or additional relief and dismissed Volvo's suit for a declaratory judgment for a lack of jurisdiction. *Id.* Notably, however, the court found that the Commission had no authority to grant monetary damages for breach of contract, even upon a legal determination by the Commission that a contract was

15

violated. *Id.* at 5. As a result, the court found that it had jurisdiction over Volvo's damages claims, that there were no complex regulatory statutes or difficult questions of state law to be addressed, and, therefore, it refused to stay Volvo's claim for money damages for breach of contract. *Id.*

American Honda also cites the cases of *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 00-C-132 (E.D. Wis. 2000) and *South Bay Creditors Trust v. General Motors Acceptance Corp.*, 82 Cal. Rptr. 2d. 2 (Cal. Ct. App. 1999) to support its argument that the fraud claims are sufficiently different than termination under the LMVA. In *Harley Davidson*, the manufacturer asserted claims of intentional misrepresentation, negligent misrepresentation, and anticipatory breach of contract. 00-C-132, p. 3. Accordingly, the Court expressly determined that the manufacturer's tort claims were not within the jurisdiction of Florida's Department of Highway Safety and Motor Vehicles and that the department had no power to grant the relief sought by Harley Davidson. In declining to apply the doctrine of primary jurisdiction, the court also found that the manufacturer's claims did not require any administrative expertise.

In *South Bay Creditors*, the dealership filed an action against the manufacturer pleading causes of action for fraud, constructive fraud/breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing. 82 Cal. Rptr. 2d. at 5. In a reversal of roles, the manufacturer sought to force the dealership to first exhaust its remedies with California's New Motor Vehicle Board (hereinafter the "Board"). The district court granted the manufacturer's motion for dismissal, but the court of appeal reversed. In so doing, the appeal court briefly addressed the doctrine of primary jurisdiction. *Id.* at 8-9. The court noted that the referral to the Board under the primary jurisdiction was inappropriate because the factual issues

and common law claims raised by the plaintiff were not beyond the usual competence of the courts and it did not indicate a need for prior resort to the Board's administrative experience. Finally, the court of appeal noted that courts should "exercise great caution to prevent the Board from being used by manufacturers as 'an extra line of defense from lawsuits by dealers,' rather than fulfilling its intended purpose of protecting dealers from 'undue control' by manufacturers" *Id.* at 10.

The Court finds that these cases are distinguishable from the present matter on several accounts. First, there is no evidence in either of these cases that the appropriate state commissions voiced an interest in the cases. In the present matter, not only has the Commission filed an *amicus curiae* brief alleging that the State of Louisiana has a declared public policy to adjudicate the issue of whether the franchise should be nullified and rescinded due to Premier Honda's alleged fraud in obtaining the franchise, but the LADA has also filed a memorandum in support of Premier Honda's motion.

Next, regardless of how American Honda styles its claims for relief, it is ultimately seeking to terminate its Dealership Agreement with Premier Honda, even if the relief sought is distinct. This is distinguishable from the *Harley-Davidson* matter, where it is not clear that the manufacturer was seeking rescission when the district court considered the application of the doctrine of primary jurisdiction. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F. 3d 973, 989 n. 3 (7th Cir. 2003). In *Harley-Davison*, the district court made no mention of rescission, or any indication that it considered the dealer's motion to dismiss in such a context. This is in stark contrast to the present matter.

The LADA notes that American Honda's request for relief based on Premier Honda's fraudulent actions is of no moment because the "fraud" on which American Honda bases its complaint is not fraud at all, but the exercise of Premier Honda's statutory rights under the LMVA.  LADA Memorandum, p. 9.  This is an important point because it implicates that American Honda's actions also gave rise this dispute (*i.e.*, it is not clear whether American Honda comes to this Court with clean hands).  Although it is not clear whether or not American Honda compelled or coerced Jerome Imports and Premier Honda to style their transaction in a certain manner, this Court is concerned about the implications of these allegations (especially in light of the fact that American Honda prepared the Deed is Done letter that it required the parties to sign).  The resolution of this matter has a direct bearing on American Honda's claims of fraud and is directly relevant to the complaint pending before the Commission.

As such, this Court finds that a determination as to whether American Honda could require Jerome Imports to waive its termination rights under the LMVA must be made.  If it could not, it must also be determined whether Jerome Imports could validly assign those rights to Premier Honda, such that American Honda violated the LMVA when it denied the repurchase request.  If the Commission determines that American Honda improperly induced or coerced Premier Honda and/or Jerome Imports to waive the repurchase rights guaranteed by the LMVA, then American Honda's allegations of fraud are almost certainly without merit because it would support Premier Honda's claims that its intent was not to obtain an unfair advantage, but to exercise rights that it thought were due under the law.  Therefore, before the Court can consider an action for nullification based on fraud, it must first be determined if American Honda induced

or coerced Premier Honda and/or Jerome Imports to waive termination rights in violation of La. R.S. 32:1254(N). This is a matter that implicates a need for uniformity in the car sales industry.

Furthermore, like the subject matter in *South Bay Creditors*, this is an issue that is not beyond the competence of this court. But unlike that decision, it is a matter that implicates a need to resort to the Commission's administrative experience. In a letter dated March 2, 2004, included in Exhibit B to American Honda's Opposition to Dismiss, Mr. Stoutz, counsel for Premier Honda, notes that an assignment of rights has been included in every transaction/closing that he has prepared. Furthermore, in the same letter, Premier Honda challenges American Honda's construction of "termination" in La. 32:1257. These are issues that are specifically within the administrative expertise of the Commission.

Finally, American Honda asserts that, but for its fraudulent actions, Premier Honda would have no standing to assert its claim before the Commission. See American Honda's Response to LADA, pp. 6-7. The fact remains, however, that Premier Honda has both a valid dealership license from the Commission and a valid franchise from American Honda. As such, it would be improper for this Court to entertain American Honda's complaints at this time, when several of the issues that this Court will have to resolve in order to grant American Honda's requested relief are properly and presently pending before the Commission.

Therefore, although this Court finds that American Honda's claims for rescission, nullity, and damages are distinct from termination rights afforded by the LMVA, this Court defers to the Commission at this time, in accordance with the doctrine of primary jurisdiction, for the following reasons: (1) the matter which is presently pending before the Commission is directly related to the factual and legal findings implicated in American Honda's request before this

Court; (2) these matters are within the expertise of the Commission; and, (3) deference will further a need for uniformity within the regulatory scheme–especially as it pertains to termination rights.  If, however, the Commission determines that American Honda is not required to repurchase the vehicles and parts, then this Court is prepared to move this proceeding forward.  As such, this Court does not reach the matter of *Burford* abstention.

ACCORDINGLY,

**IT IS ORDERED** that Plaintiff's **Motion for Partial Summary Judgment (Rec. Doc. 13)** is DENIED;

**IT IS FURTHER ORDERED** that Defendant's **Motion to Dismiss (Rec. Doc. 11)** is GRANTED in Part and DENIED in part.  This matter is STAYED and ADMINISTRATIVELY CLOSED.  If the Commission determines that American Honda is not required to repurchase the vehicles and parts, then American Honda may move this Court to re-open this matter.

* * * * * * * *